IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| CLAUDE SAKR, LAURA JACKSON, and MARGARET SKENDERIAN,<br><br>        Plaintiffs,<br>   v.<br><br>CITY OF PORTLAND, UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, SCOTT TURNER, and HOME FORWARD,<br><br>        Defendants. | Case No.: 3:24-cv-01265-AN<br><br>OPINION AND ORDER |

Plaintiffs Claude Sakr, Laura Jackson, and Margaret Skenderian filed this action against defendants City of Portland ("City"); United States Department of Housing and Urban Development ("HUD") and Scott Turner[1] (collectively, "Federal defendants"); and Home Forward, seeking (1) a declaration that the Environmental Assessment ("EA") and Finding of No Significant Impact ("FONSI") regarding the Peaceful Villa Redevelopment Project (the "Project") violate the National Environmental Policy Act ("NEPA"), are arbitrary and capricious, and otherwise in violation of law, (2) an order vacating and remanding the EA and FONSI to the Portland Housing Bureau ("PHB") and HUD; and (3) injunctive relief prohibiting the commencement of demolition or construction until an adequate NEPA document is prepared. On May 7, 2025, plaintiffs filed a motion for preliminary injunction. On May 20, 2025, the Court heard oral argument from the parties. For the reasons stated below, plaintiffs' motion is DENIED.

## LEGAL STANDARD

A preliminary injunction is an "extraordinary remedy that may only be awarded upon a

---

[1] Pursuant to Federal Rule of Civil Procedure ("FRCP") 25(d), Scott Turner, in his official capacity as Secretary of HUD, has been substituted for Adrianne Todman, who was originally named as a defendant in her official capacity as Acting Secretary of HUD.

1

clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To obtain a preliminary injunction, the plaintiff must show that: (1) the plaintiff is likely to succeed on the merits; (2) the plaintiff is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in the favor of the plaintiff; and (4) an injunction is in the public interest. *Id.* at 20. Under the Ninth Circuit's sliding-scale approach, if there are "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff," as well as a showing that plaintiff will suffer irreparable harm and the injunction is in the public interest, then a preliminary injunction may still issue. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011) (citation modified).

There are two types of preliminary injunctions: (1) a prohibitory injunction that "preserve[s] the status quo pending a determination of the action on the merits," and (2) a mandatory injunction that "orders a responsible party to take action." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F. 3d 873, 878-79 (9th Cir. 2009) (citation modified) (alteration in original). A mandatory injunction "'goes well beyond simply maintaining the status quo *pendente lite* [and] is particularly disfavored.'" *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994) (quoting *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1979)) (alteration in original). The status quo means "the last, uncontested status [that] preceded the pending controversy." *Marlyn Nutraceuticals*, 571 F. 3d at 879 (citation modified).

When a mandatory preliminary injunction is requested, the district court should deny such relief "unless the facts and law clearly favor the moving party." *Anderson*, 612 F.2d at 1114 (quoting *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976)). Generally, mandatory injunctions "are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages." *Id.* at 1115 (quoting *Clune v. Publishers' Ass'n of N.Y.C.*, 214 F. Supp. 520, 531 (S.D.N.Y. 1963)).

## BACKGROUND

A.   **Factual Background**

Plaintiffs are long-time residents of the Richmond neighborhood in Southeast Portland in

which the Project is being constructed. First Am. Compl. ("FAC"), ECF [12], ¶ 6. The Project is the proposed redevelopment of a former affordable housing project located at 4626 SE Clinton Street, Portland, Oregon 97206 on an approximately four-acre site owned by Home Forward. CITY_00000216-CITY_00000294.[2] The Project will redevelop the existing complex of eighteen buildings containing seventy affordable-housing units into a modern development with three buildings containing 166 affordable-housing units. CITY_00000217.

The Project is partially funded by HUD, which required defendants to prepare an EA under NEPA to determine the environmental impacts of the Project. *See* CITY_00000219; 42 U.S.C. § 4336. Pursuant to 24 C.F.R. § 58.2, the City has been delegated HUD's NEPA environmental review authority and was the "Responsible Entity" for the Project. *See* CITY_00000208.

From December 2021 to March 2022, Home Forward issued requests for proposals for an architect and construction manager/general contractor, eventually selecting Bora Architects ("Bora") and LMC Construction ("LMC"), respectively. Decl. April Berg Supp. Home Forward Resp. ("Berg Decl."), ECF [48], ¶ 13. During the design phase, Home Forward conducted meetings with Peaceful Villa residents and the Richmond Neighborhood Association ("RNA") and formed a Community Advisory Committee ("CAC"), which included plaintiffs Sakr and Skenderian, to solicit feedback and provide information. *Id.* ¶ 14. In response to the feedback received in those meetings between December 2021 and October 2023, Home Forward revised the Project design, including changes intended to increase the Project's compatibility with the surrounding neighborhood such as reducing building height, adding parking, and increasing setback. *Id.* ¶¶ 15-16.

On October 18, 2022, Home Forward's Board of Commissioners approved a plan for the Project, noting that redevelopment is intended "[to benefit] the populations it serves and the surrounding community, to improve the quality of this housing stock, and to provide additional housing and opportunities for Peaceful Villa Apartment's residents[.]" *Id.* ¶ 8 & Ex. 1.

---

[2] All citations beginning with "CITY" refer to the administrative record lodged in this case.

On March 1, 2023, Home Forward contracted with Dudek, an environmental consulting firm, to assist with preparation of a draft EA and supporting materials for the HUD environmental review process. *Id.* ¶ 17. On November 15, 2023, the City posted required notices regarding the FONSI and intent to request a release of funds. CITY_00001699-1701. Upon request, Home Forward extended the comment period from fifteen to thirty-two days, until December 18, 2023. *See* Berg Decl. ¶ 18. Plaintiffs, as well as the RNA and other individuals, submitted public comments during this period objecting to the FONSI. *See* CITY_00001360-CITY_00001449; CITY_00001528-CITY_00001568. After reviewing the comments, Dudek catalogued each letter and issue, and the City responded to each letter received. Berg Decl. ¶ 18; *see* CITY_00000299-328. On February 2, 2024, the City issued the EA and FONSI. CITY_00000216-294. On February 15, 2024, plaintiffs Sakr and Jackson submitted an objection to HUD regarding PHB's Request for Release of Funds for the Project. CITY_00000115-128. On March 29, 2024, the Portland HUD office approved the Request for Release of Funds and Certification for the Project. Berg Decl. ¶ 19; *see* CITY_00000003.

After Bora submitted initial set drawings to the Portland Bureau of Development Services ("BDS") for review for compliance with code requirements, BDS issued the permit ready letter on May 16, 2024, and the demolition permit on August 1, 2024. Berg Decl. ¶ 20. Between August and October 2024, Home Forward relocated all fifty-six households residing at the former Peaceful Villa complex to temporary housing for the duration of construction. *Id.* ¶ 21. A security fence was erected around the perimeter of the site in late October 2024. *Id.* ¶ 23. On October 24, 2024, Home Forward issued neighborhood notices in advance of the start of demolition, as required by BDS. *Id.* ¶ 24 & Ex. 2; Decl. Claude Sakr ("Sakr Decl."), ECF [39-1], ¶ 28 & Ex. 5. On or about October 28, 2024, LMC began the abatement and demolition phase. Sakr Decl. ¶ 28; *see id.* at Ex. 5; Berg Decl. Ex. 2.

On February 28, 2025, BDS issued the building permit; shortly after, LMC began mass excavation to prepare for the foundation pours. Berg Decl. ¶ 25. Home Forward states that the site preparation methodology was tailored specifically to the Project design, including heavy earthwork and trenches. *Id.* In April 2025, LMC started to prepare soldier piles, geopiers, and storm utilities, which

4

included the pouring of concrete. *Id.* ¶ 26. Home Forward asserts that on April 3, 2025, LMC provided a courtesy notice to neighboring residents that site activities would include ongoing geopier installation, shoring column installation, mass excavation and earthwork, and drywell and manhole installations. *Id.* ¶ 26 & Ex. 3. In the coming weeks, planned construction will include digging, preparing, and pouring footings for the buildings. *Id.* ¶ 28. May and June 2025 will consist primarily of concrete formwork of the footings and stem walls in preparation for slab-on-grade placement. *Id.* ¶ 29. Home Forward anticipates that construction on the Project will be complete in or about December 2026. *Id.* ¶ 29 & Ex. 4.

Plaintiffs allege that although defendants provided notice to the neighborhood regarding the demolition phase, or "Phase 1," defendants have not provided any further information on the construction schedule despite requests. Pls. Mot. Prelim. Injunc. ("Pls. Mot."), ECF [39], at 4 (citing Sakr Decl. ¶ 29). Plaintiffs argue that the "Phase 2" work in the last few weeks is more substantial and potentially irrevocable because it has the effect of making construction of an alternate design impracticable or at least extremely difficult. *Id.* (citing Sakr Decl. ¶ 33). Home Forward and PHB have not paused operations, and construction is currently ongoing. *Id.* (citing Sakr Decl. ¶ 34); *see* Berg Decl. Ex. 4.

**B.      Procedural History**

Plaintiffs initiated this action on August 2, 2024. Plaintiffs allege that defendants violated NEPA because (1) the City's FONSI was unlawful; (2) the NEPA process did not include sufficient public involvement; (3) the EA contains an inadequate environmental assessment; and (4) the EA failed to consider a reasonable range of alternatives. FAC ¶¶ 18-36.

The City lodged the administrative record in this case on January 31, 2025. ECF [31]. Aside from the instant motion for preliminary injunction, there are pending cross-motions for summary judgment and a pending motion to complete the administrative record. ECF [32], [34], [38]. Briefing on the motion to complete the administrative record was complete on May 28, 2025. The parties agreed to an extended briefing schedule on the cross-motions for summary judgment, and briefing on those motions will be complete on June 20, 2025.

## DISCUSSION

Plaintiffs seek a preliminary injunction enjoining further construction of the Project until the Court rules on the pending cross-motions for summary judgment. The Court finds that plaintiffs have not met their burden to establish that they are entitled to this preliminary relief.

As an initial matter, plaintiffs argue that they seek a prohibitory injunction to maintain the status quo. Defendants argue that although their request might have been for a prohibitory injunction before construction began, plaintiffs are now seeking a mandatory injunction because by enjoining further construction, the Court would be shutting down ongoing construction work.[3]

The Court finds that at this stage, plaintiffs are seeking a mandatory injunction that "goes well beyond simply maintaining the status quo *pendente lite* [and] is particularly disfavored." *Stanley*, 13 F.3d at 1320 (citation omitted). Although construction had not yet begun when plaintiffs filed suit in August 2024, plaintiffs did not seek a preliminary injunction at that time. Instead, plaintiffs waited until nearly seven months after construction began to file a motion for preliminary injunction. At this time, any injunction would be ordering defendants to stop active and ongoing construction work. *See* Berg Decl. Ex. 4; Sakr Decl. Ex. 6. As a result, plaintiffs must establish that "the facts and law clearly favor [plaintiffs]." *Stanley*, 13 F.3d at 1320. Nevertheless, even under the standards applicable to prohibitory injunctions, plaintiffs have not shown that they are entitled to such relief.

**A.    Likelihood of Success on the Merits**

Plaintiffs argue that they raise serious questions going to the merits of their claim that defendants violated NEPA by failing to consider a reasonable range of alternatives.[4] Pls. Mot. 6.

---

[3] The Ninth Circuit has noted that its "approach to preliminary injunctions, with separate standards for prohibitory and mandatory injunctions, is controversial." *Hernandez v. Sessions*, 872 F.3d 976, 997 (9th Cir. 2017). "Even other circuits that apply a heightened standard to mandatory injunctions have questioned whether the line between mandatory and prohibitory injunctions is meaningful." *Id.* at 998. Nevertheless, "[w]hatever the flaws of the mandatory-prohibitory distinction," this Court is "bound by circuit precedent to discern the line between mandatory and prohibitory injunctions." *N.D. v. Reykdal*, 102 F.4th 982, 992 (9th Cir. 2024) (quoting *Hernandez*, 872 F.3d at 998).

[4] Plaintiffs do not address their remaining three claims that defendants relied on inaccurate data and erroneous assumptions in the EA; failed to meet NEPA's public participation requirements; and unlawfully delegated NEPA responsibilities without independent review. *See* Pls. Mot. Summ. J., ECF [32], at 14-21. Therefore, the Court does

As of the date of this order, briefing on cross-motions for summary judgment is ongoing, and the Court has not yet decided whether the administrative record should be supplemented. Solely for the purposes of this motion, the Court assumes without deciding that plaintiffs have demonstrated serious questions going to the merits. *See Kunaknana v. U.S. Army Corps of Eng'rs*, No. 3:13-cv-00044-SLG, 2014 WL 975592, at *3 (D. Alaska Mar. 12, 2014).

B.     **Likelihood of Irreparable Harm**

Even assuming without deciding that plaintiffs have established serious questions going to the merits, however, plaintiffs do not demonstrate a substantial likelihood of irreparable harm in the absence of preliminary relief.

As a threshold matter, plaintiffs' nearly seven-month delay in filing this motion for preliminary injunction "casts doubt on their allegations of irreparable harm." *Oregon Nat. Desert Ass'n v. Bushue*, 594 F. Supp. 3d 1259, 1266 (D. Or. 2022); *see Cascadia Wildlands v. Carlton*, 341 F. Supp. 3d 1195, 1204 (D. Or. 2018) (denying preliminary injunction when the plaintiffs waited eight months before filing suit, "turn[ing] what could have been speculative harms to the plaintiffs into, essentially, vested interests"). On October 24, 2024, Home Forward informed plaintiffs and the neighborhood that construction activities were beginning. On October 28, 2024, LMC began demolishing existing buildings. Plaintiffs characterize the demolition phase as *de minimis* work that would have been done regardless of the Project's design. However, the fact remains that construction on the Project began in October 2024, and plaintiffs waited until construction reached a so-called "Phase 2" in April 2025 before filing the instant motion. This "weighs determinatively against a finding of irreparable harm." *Reno-Sparks Indian Colony*, 663 F. Supp. 3d at 1202 (D. Nev. 2023) (citing *Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984)); *see Or. Nat. Desert Ass'n*, 594 F. Supp. 3d at 1266 (citing *Oakland Trib., Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985)) (holding that two-month delay "counsel[ed] against a finding of likely irreparable harm.").

---

not address those claims here. *See Reno-Sparks Indian Colony v. Haaland*, 663 F. Supp. 3d 1188, 1195 n.2 (D. Nev. 2023), *appeal dismissed*, No. 23-15780, 2024 WL 2317688 (9th Cir. Jan. 4, 2024).

Even if plaintiffs had filed this motion without delay, they have not shown a substantial likelihood of irreparable harm. Plaintiffs argue that they and the surrounding Richmond neighborhood "will be immediately and irreparably harmed by the construction of the Project as designed" because "[t]he design will affect the community environment, neighborhood character, public safety, traffic volumes, and visual resources, among other impacts." Pls. Mot. 8 (citing Sakr Decl. ¶ 16). In making these allegations, plaintiffs rely solely on Sakr's declaration. Importantly, plaintiffs do not argue that any of these alleged irreparable harms will occur within the next several months before the Court issues a decision on the parties' cross-motions for summary judgment. Instead, plaintiffs' argument is primarily focused on the concern that the Court might be less likely to order plaintiffs' requested relief if construction on the Project has progressed past a certain point. This, however, does not constitute irreparable harm. *See, e.g., Harrosh v. Tahoe Reg'l Plan. Agency*, 640 F. Supp. 3d 962, 983 (E.D. Cal. 2022) (finding no irreparable harm "if construction continues while [the] case is pending" because pier could be removed).

On this record, "it becomes clear that it would be premature for this court to grant any relief prior to an adjudication on the merits." *Kass v. Arden-Mayfair, Inc.*, 431 F. Supp. 1037, 1041 (C.D. Cal. 1977). Plaintiffs have not argued that their asserted harms are likely to occur within the next several months; indeed, most, if not all, of plaintiffs' asserted harms would occur only after the Project's completion in or around December 2026. As a result of plaintiffs' delay, it has been more than a year since defendants issued the EA at issue, and almost seven months since construction began. "It is now too late in the game for plaintiffs to complain that [] defendants' position will become entrenched if this [C]ourt does not issue the requested preliminary relief." *Id.* Moreover, plaintiffs have not shown that these harms could not be addressed and therefore has not shown that these harms are irreparable. *See Carrick v. Santa Cruz County*, No. 12-CV-3852-LHK, 2012 WL 6000308, at *2 (N.D. Cal. Nov. 30, 2012) (discussing court order to the plaintiff to either demolish illegal units or bring units up to code). Accordingly, plaintiffs have not met their burden to make a "clear showing" of a substantial likelihood of irreparable harm. *See Winter*, 555 U.S. at 22.

C.  **Balance of Equities and Public Interest**

Although plaintiffs' failure to show irreparable harm forecloses preliminary injunctive relief, plaintiffs also do not demonstrate that the balance of the equities and public interest weigh in their favor, let alone strongly in their favor, as required under the sliding scale approach. Where, as here, the government is a party, the balance of equities and public interest elements merge. *City & Cnty. of S.F. v. U.S. Citizenship & Immigr. Servs.*, 944 F.3d 773,806 (9th Cir. 2019) (citing *California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018)). "To balance the equities, [courts] consider the hardships each party is likely to suffer if the other prevails." *Id.* (citing *N. Cheyenne Tribe v. Norton*, 503 F.3d 836- 843-44 (9th Cir. 2007)). Courts "should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24 (internal quotation marks and citations omitted).

Plaintiffs assert that they face significant irreparable and procedural injury. However, as explained above, plaintiffs' arguments regarding irreparable harm are insufficient. As for the asserted procedural injury, it is true that as a general matter, "[t]he public interest is served by requiring the [government] to comply with the law." *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 992 (9th Cir. 2020). However, if plaintiffs prevail on the merits, an order requiring defendants to conduct an adequate EA would address their asserted procedural injury. *See id.* This does not demonstrate that in the absence of a preliminary injunction, the balance of equities weighs in plaintiffs' favor.

On the other hand, Home Forward asserts that for each month that the Project is delayed, it will incur monthly costs of approximately $1 million, including interest fees on the construction loan, insurance costs, and fees related to the contractor and subcontractors. Berg Decl. ¶¶ 30-35. Moreover, the public interest in increasing access to affordable housing in Portland is undisputed. Decl. Daniel Esterling ("Esterling Decl."), ECF [44], ¶¶ 5-6; Pls. Mot. 11; *see Rothenberg Sawasy Architects, Inc. v. Srivastava*, No. CV 07-3229-GHK (CWx), 2007 WL 10132401, at *5 & n.4 (C.D. Cal. Nov. 30, 2007). The Federal defendants have authorized Home Forward to spend $1.64 million in public housing capital funds to build public housing units and $3.2 million in voucher funds for the temporary relocation of and housing for Peaceful Villa residents. Esterling Decl. ¶ 4. Delays in the Project will mean that the residents of Peaceful

9

Villa will be prevented from returning to their homes, and additional Peaceful Villa units will not be available to individuals seeking affordable housing. *Id.* ¶ 6; Berg Decl. ¶¶ 36-37.

Plaintiffs argue that defendants face only delay and that any expenses that defendants may incur from delay are not relevant because defendants chose to continue with construction despite pending litigation. However, given plaintiffs' burden to establish that they are entitled to a preliminary injunction, the Court notes that plaintiffs were notified as early as July 2023 that Home Forward planned to relocate the Peaceful Villa residents in early 2024 and start construction in the spring or summer of 2024. *See* CITY_00003574; CITY_00001115. The City issued the EA that forms the basis of this suit on February 2, 2024. CITY_00000216-CITY_00000294. Despite having already submitted letters during the public comment period and a formal objection to HUD, plaintiff waited six months after the EA's issuance before filing suit, and more than a year before filing the instant motion. Plaintiffs' suggestion at oral argument that defendants could renegotiate their additional monthly costs to mitigate these expenses is not well-taken; defendants' costs at this phase of construction likely could have been prevented, or at least mitigated, by a timelier motion by plaintiffs.

In balancing these factors, the impacts of a preliminary injunction to defendants and the public interest are extensive, whereas plaintiffs' harms in the absence of one are limited. Plaintiffs have not shown that that the balance of the equities and public interest weigh in their favor. Accordingly, plaintiffs thus have not established that they are entitled to the "extraordinary remedy" of a preliminary injunction.

## CONCLUSION

For the foregoing reasons, plaintiffs' Motion for Preliminary Injunction, ECF [39], is DENIED.

IT IS SO ORDERED.

DATED this 2nd day of June, 2025.

_____
Adrienne Nelson
United States District Judge